FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 15, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEITH A., | NO: 1:18-CV-3035-FVS |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 10 and 14. This matter was submitted for consideration without oral argument. The plaintiff is represented by Attorney D. James Tree. The defendant is represented by Special Assistant United States Attorney Ryan Lu. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 14, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 10.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

Plaintiff Keith A.[1] protectively filed for disability insurance benefits on May 12, 2014. Tr. 215-16. Plaintiff alleged an onset date of July 31, 2006. Tr. 215. Benefits were denied initially, Tr. 136-38, and upon reconsideration, Tr. 139-40. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on March 22, 2017. Tr. 63-111. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits, Tr. 12-32, and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. § 405(g).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 57 years old at the time of the hearing. Tr. 70. He completed high school and some college. Tr. 71. During the relevant time period he was single, never married, and lived on a boat by himself. Tr. 70-71. Plaintiff has work history as a clean-up worker, cargo inspector, chemistry lab technologist, and tool calibrator. Tr. 101-04. He testified that he could not work during the relevant

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

adjudicatory period because he was too depressed to work for long periods of time, which "affected [his] job performance, [his] attendance and the attitude of [his] employers." Tr. 74-75.

Plaintiff testified that during the relevant period he felt depressed 80% of the time and felt "good" 20% of the time; and he alternated between periods of high productivity followed by a depressive "crash." Tr. 93-95. Plaintiff testified that he would isolate for weeks or months at a time "in a state of deep depression"; and he would also have episodes of hypomania that negatively affected his judgment. Tr. 75, 85, 96-97. Plaintiff also testified that he was misdiagnosed with depression and treated accordingly for many years before and after the relevant adjudicatory period, but was later diagnosed with bipolar disorder which, according to his testimony, is treated differently. Tr. 89-91.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of July 31, 2006 through his date last insured of December 31, 2006. Tr. 17. At step two, the ALJ found Plaintiff had the following severe impairments: diabetes mellitus and depression. Tr. 17. At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 17. The ALJ then found that through the date last insured, Plaintiff had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) except:
> He was limited to jobs that have a mental reasoning level no higher
> than 2. He was limited to performing simple and routine tasks. He
> was limited to simple work related decisions. He was limited to
> occasional interaction with supervisors and coworkers, and no public
> contact.

Tr. 21.  At step four, the ALJ found that through the date last insured, Plaintiff was capable of performing past relevant work as a clean-up worker.  Tr. 25.  In the alternative, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff also could have performed, including: laundry worker, hand packager, and stores laborer.  Tr. 25-26.  On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from July 31, 2006, the alleged onset date, through December 31, 2006, the date last insured.  Tr. 26.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act.  ECF No. 10.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ erred at step two;

2. Whether the ALJ erred at step three;

3. Whether the ALJ properly weighed the medical opinion evidence;

4. Whether the ALJ properly considered the lay witness evidence; and

5. Whether the ALJ properly considered Plaintiff's symptom claims.

/ / /

/ / /

## DISCUSSION

### A. Step Two

At step two, a claimant must establish that he or she suffers from a medically determinable impairment. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004-1005 (9th Cir. 2005). The claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 404.1508 (1991). "Under no circumstances may the existence of an impairment be established on the basis of symptoms alone." S.S.R. 96-4p. Thus, "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities, i.e., medical signs and laboratory findings." *Id.*

Here, the ALJ found that depression was a severe impairment at step two. Tr. 17. However, Plaintiff argues that the ALJ erred by failing to find that bipolar disorder was a medically-determinable impairment, and further, "[b]ecause the ALJ failed to consider [Plaintiff's] bipolar disorder a medically-determinable impairment, it could not have been considered within the RFC." ECF No. 10 at 4-5. In support of this argument, Plaintiff cites the following evidence: a 2012 assessment that Plaintiff has a "3 decade long attempt[] to treat depression with a number of antidepressants [and] appears to have a mood cycling problem consistent with a diagnosis of Bipolar Affective Disorder, Type 2"; a 2015 opinion

from a treating family practice physician indicating that "bipolar disorder is predominant problem," but declining to assess any functional limitations based on this diagnosis because it was not her area of expertise; a letter indicating Plaintiff had symptoms "consistent with Bipolar 2 Disorder" and would be prescribed an increase in medication to "target" those symptoms; and a 2017 letter from Plaintiff's treating psychiatrist opining that Plaintiff had struggled with bipolar disorder symptoms since he was a teenager "based on his history." ECF No. 10 at 5 (citing Tr. 362, 645, 661, 709).

As an initial matter, the Court notes that the relevant adjudicatory period under consideration by the ALJ is the alleged onset date of July 31, 2006, through Plaintiff's date last insured of December 31, 2006. *See* Tr. 15. However, the evidence cited by Plaintiff in support of his argument is entirely comprised of records dated more than five years after Plaintiff's date last insured in December 2006. The Court may disregard statements of disability made outside the relevant time period. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Moreover, Plaintiff does not cite any evidence "consisting of signs, symptoms, and laboratory findings" to support a finding that bipolar disorder was a medically determinable impairment during the relevant adjudicatory period. The only evidence arguably relevant to the adjudicatory period is a 2017 letter from Plaintiff's treating psychiatrist retrospectively opining that Plaintiff suffered from bipolar disorder since he was a teenager. Tr. 709. However, aside from this bare

diagnosis, Plaintiff fails to cite any specific limitation resulting from bipolar disorder, at any point in the longitudinal record, that was not included in the assessed RFC. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692, n.2 (9th Cir. 2009); *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination"); *Kay v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (the "mere diagnosis of an impairment … is not sufficient to sustain a finding of disability.").

For all of these reasons, the Court finds the ALJ did not err in failing to find bipolar disorder was a medically determinable impairment. Rather, the ALJ properly found, based on objective evidence from the relevant adjudicatory period, that depression was a severe impairment at step two.

**B. Step Three**

Plaintiff faults the ALJ for finding at step three that Plaintiff's mental impairment did not meet or medically equal the severity of a listed impairment.[2]

---

[2] Plaintiff argues the ALJ erred by failing to specifically assess whether bipolar disorder met or medically equaled the listing. ECF No. 10 at 5-6. However, "[t]o meet the requirements of a listing, you must have a medically determinable impairment that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). As discussed above, the ALJ did not err in failing to find bipolar disorder was a medically determinable impairment at step two. Correspondingly, the ALJ did not err in failing to evaluate bipolar disorder at step three, because it was not a medically determinable impairment.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11

ECF No. 10 at 6-9. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 404.1525. To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to her claim. 20 C.F.R. § 404.1525(d). If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The claimant bears the burden of establishing he meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

In determining whether a claimant's mental impairments meet a listing, the ALJ considers (1) whether specified diagnostic criteria ("paragraph A" criteria) are met, and (2) whether specified functional limitations ("paragraph B" criteria) are present. 20 C.F.R. § 404.1520a. To meet Listing 12.04, a claimant must satisfy paragraph B criteria, which includes at least one extreme or two marked limitations in these four areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. 20 C.F.R. § 404, Subpart P, Appendix I. "Marked" means more than moderate but less than extreme. *Id.*

Here, the ALJ concluded that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of Listing 12.04. Tr. 19. Specifically, the ALJ found the "paragraph B" criteria were not satisfied because Plaintiff had only moderate limitations in all four "paragraph B" areas of mental functioning. Tr. 19-20. In support of this finding, the ALJ relied on Plaintiff's testimony that he helped his father with property management, which involved attending meetings up to 250 miles away from his home at times up to twice a week; interacted with a small town planning commission, engineers, and other interested parties; took notes and shared notes with his father from these meetings regarding developing a 60-acre parcel; and made comments in these meetings. Tr. 19-20, 78-83. Further, Plaintiff reported that he cared for his elderly mother, who was in poor health; drove his father to the hospital for cancer treatments; ran errands; cooked meals; washed laundry; drove a car; shopped for groceries; watched television; called people on the phone and used a computer for emails; and handled money including paying bills and using a checkbook. Tr. 19-20, 81-85, 265-68.

Plaintiff contends the ALJ erred in finding that Plaintiff had only moderate limitations in two of the "paragraph B" criteria: (1) interacting with others, and (2) adapting and managing himself. ECF No. 10 at 6-9. In support of this argument, Plaintiff cites evidence of his "poor interactions with others," including his self-reports of "clashes" with the city manager; "tension" with his terminally ill mother who he cared for along with his father; lack of romantic relationships; and history

of "deteriorating" relationships with coworkers or supervisors, including Plaintiff's report that a supervisor attempted to get a restraining order against him as a result of his "threats." ECF No. 10 at 7 (citing 88, 232-34, 361, 368). In addition, Plaintiff argues the ALJ failed to consider evidence regarding his ability to adapt and manage himself, including his self-reports of isolation for weeks or months at a time, medical leaves of absence to manage his mental health, and inability to succeed at one job despite being given "multiple chances to succeed by transferring [Plaintiff] to different departments or jobs." ECF No. 10 at 8 (citing Tr. 75, 85, 92, 232-34, 367-68, 373, 428). Finally, Plaintiff cites lay witness evidence that Plaintiff's "mood swings and irritability resulted in alienation from family and friends" and "[w]hen the same symptoms of depression and mania evidenced themselves in his employment, he would either be terminated or quit jobs on his own." Tr. 300-01.

However, the Court notes that Plaintiff fails to cite medical evidence from the relevant adjudicatory period, including opinion evidence, to support his argument that the ALJ erred in considering this "paragraph B" criteria. Instead, Plaintiff relies entirely on his own testimony and self-reported limitations, and the lay witness testimony of Kathy Bennett. ECF No. 10 at 6-9. As noted by Defendant, and discussed in detail below, the ALJ properly discounted Plaintiff's symptom claims, and granted little weight to the lay testimony of Kathy Bennett. ECF No. 14 at 17. Accordingly, Plaintiff's reliance on this evidence does not

establish that the ALJ erred in failing to credit that evidence when assessing the "paragraph B" criteria.

Based on the foregoing, and regardless of evidence that could be considered more favorable to Plaintiff, the Court finds the ALJ properly considered the "paragraph B" criteria; and ultimately concluded, based on substantial evidence, that Plaintiff's claimed mental impairments did not meet or medically equal Listing 12.04 during the relevant adjudicatory period. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).

**C. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

Plaintiff argues the ALJ improperly assessed the opinions of treating physician Daniel McCabe, M.D., treating physician Stephen Wescott, M.D., and examining physician Timothy S. Cahn, Ph.D. ECF No. 10 at 10-13, 17-19.

*1. Daniel McCabe, M.D.*

In January 2017, as noted by the ALJ, Dr. McCabe wrote a letter noting that he had treated Plaintiff since August 2015 for bipolar disorder, "which has been difficult to control with ongoing episodes of mania and depression." Tr. 24 (citing Tr. 709). Dr. McCabe also noted that bipolar disorder is "typically a disease process in which individuals begin having symptoms in the late teenage years or early 20's. It is usually a disease process which requires lifelong treatment. Given this [Dr. McCabe] believe[s] that [Plaintiff] has been struggling with Bipolar Disorder Symptoms since his teenage years of 16-17 years of age based on his history." Tr. 709. The ALJ assigned Dr. McCabe's opinion little weight for several reasons. Tr. 24.

"First, [Dr. McCabe] did not begin treating [Plaintiff] until several years after the period at issue in [the] decision, and his opinion has little relevancy. Second, [Dr. McCabe's] opinion is vague and does not provide specific vocational limitations." Tr. 24. Plaintiff argues the ALJ improperly granted Dr. McCabe's opinion less weight because it was provided after the relevant period, as "the Ninth Circuit has ruled that medical evaluations made after a claimant's insured status has expired are still relevant to pre-expiration conditions." ECF No. 10 at 12 (citing *Lester*, 81 F.3d at 832). However, even assuming, *arguendo*, that the ALJ erred in rejecting Dr. McCabe's letter because it was written well after the adjudicatory period, any error is harmless because the ALJ additionally found that Dr. McCabe did not offer any specific work-related functional limitations from the relevant adjudicatory period. Tr. 24. Where, as here, a physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions." *See, e.g., Turner*, 613 F.3d at 1223.

Plaintiff additionally contends that the ALJ erred by evaluating Dr. McCabe's 2017 letter "about the longevity of [Plaintiff's] disorder in isolation without consideration of [Dr. McCabe's] supportive treatment notes regarding the specifics of the disorder, and then used this as a reason to find the opinion 'vague'." ECF No. 10 at 11-12. In support of this argument, Plaintiff cites (1) an

August 2015 treatment note wherein Dr. McCabe noted a "diagnosed history of bipolar 2 disorder with extreme irritability and also depressive symptoms" and "extensive history of volatile behaviors with impulsive anger toward others and irritability"; and (2) a letter from Dr. McCabe noting that he would be "targeting" Plaintiff's bipolar disorder symptoms with medication increases. ECF No. 10 at 10-11 (citing Tr. 656-67, 661). However, Plaintiff fails to identify any specific functional limitations opined by Dr. McCabe that were not properly accounted for in the assessed RFC. *See Turner*, 613 F.3d at 1223; *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination"). Moreover, the "mere diagnosis of an impairment … is not sufficient to sustain a finding of disability." *Kay*, 754 F.2d at 1549.

For all of these reasons, the Court finds no error in the ALJ's consideration of Dr. McCabe's 2017 letter.[3]

_____

[3] The ALJ additionally found "the medical evidence of record does not support the severity of [Dr. McCabe's] opinions." Tr. 24. Plaintiff correctly argues that this was an "improperly conclusory finding." ECF No. 10 at 13. "When explaining his [or her] reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion, rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). However, this error is harmless because, as discussed herein, the ALJ offered additional reasons, supported by substantial evidence, for rejecting Dr. Wescott's opinion. *See Carmickle*, 533 F.3d at 1162-63.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 18

1      *2. Stephen Wescott, M.D.*

2      In August 1999, Plaintiff's treating physician, Dr. Wescott, noted on a

3 prescription sheet that Plaintiff was "unable to work" from August 2, 1999 to

4 August 30, 1999, "due to his medical condition." Tr. 242. The ALJ gave Dr.

5 Wescott's opinion little weight for several reasons. Tr. 23.

6      First, the ALJ noted that Dr. Wescott's opinion is "several years prior to the

7 period at issue in [the] decision, and has little relevancy." Tr. 23. Plaintiff

8 generally argues that "[a]lthough [this] opinion [was] rendered prior to the relevant

9 period, these findings provided supportive, concurrent evidence of many of

10 [Plaintiff's] own statements regarding the longevity of his disorder, his social and

11 occupational struggles, and the severity of his symptoms." ECF No. 10 at 17-18.

12 However, it is well-settled in the Ninth Circuit that "medical opinions that predate

13 the alleged onset of disability are of limited relevance." *See, e.g.*, *Carmickle v.*

14 *Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Thus, because

15 Dr. Wescott's 1999 opinion is dated almost seven years prior to the alleged onset

16 of disability on July 31, 2006, it was reasonable for the ALJ to reject Dr. Wescott's

17 opinion because it had "little relevancy" to the period Plaintiff is claiming

18 disability.

19      Second, the ALJ noted Dr. Wescott's opinion was not well explained and

20 contained little analysis. Tr. 23. The Court may decline to address this issue

21 because Plaintiff did not challenge the reason with specificity in his opening brief.

*See Carmickle*, 533 F.3d at 1161 n.2.  Regardless, the ALJ may permissibly reject reports that do not contain any explanation of the bases for their conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Bray*, 554 F.3d at 1228 ("the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings.").  Thus, the ALJ properly discounted Dr. Wescott's opinion because it had no explanation whatsoever for finding that Plaintiff could not work in August 1999 aside from a vague reference to his "medical condition."  Tr. 242.

Third, the ALJ rejected Dr. Wescott's opinion because he "appears to base his opinion on the claimant's subjective complaints rather than on objective medical evidence."  Tr. 23.  An ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as incredible.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Plaintiff argues the ALJ did not provide the requisite basis for this finding.  ECF No. 10 at 18.  The Court agrees.  "When explaining his [or her] reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion, rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  However, any error is harmless because, as discussed above, the ALJ gave

additional reasons, supported by substantial evidence, for rejecting Dr. Wescott's opinion.[4]  *See Carmickle*, 533 F.3d at 1162-63.

For all of these reasons, the Court finds no error in the ALJ's consideration of Dr. Wescott's opinion.

3. *Timothy S. Cahn, Ph.D.*

In October 1999, Dr. Cahn examined Plaintiff and conducted psychological tests in order to assess his "fitness-for-duty" after being suspended from his job for "a threat of violence." Tr. 367-73.  Dr. Cahn opined that "[w]hile Plaintiff does not represent a threat of violence to his supervisor or others at this time, he does not appear to be fit for duty by virtue of his depression and should be offered the option of a medical leave of absence.  The timing of his return to work should be deferred to his treatment providers." Tr. 373.  The ALJ gave Dr. Cahn's opinion little weight for several reasons.  Tr. 23-24.

First, the ALJ found Dr. Cahn's report "is dated several years prior to the period at issue, and has little relevancy to [the] period [Plaintiff] is alleging disability." Tr. 24.  As with Dr. Wescott's opinion, discussed above, Plaintiff argues that although Dr. Cahn's opinion was rendered prior to the relevant period,

---

[4] The ALJ also noted that "the medical record as a whole does not support the severity of [Dr. Wescott's] opinion." Tr. 23.  However, the Court declines to address this reason as it was not identified or challenged by either party.  *See Carmickle*, 533 F.3d at 1161 n.2.

his findings are nonetheless "supportive" of Plaintiff's statements regarding the "longevity of his disorder, his social and occupational struggles, and the severity of his symptoms." ECF No. 10 at 17-18. However, it is well-settled in the Ninth Circuit that "medical opinions that predate the alleged onset of disability are of limited relevance." *See, e.g.*, *Carmickle*, 533 F.3d at 1165. Thus, because Dr. Cahn's 1999 opinion was rendered almost seven years prior to Plaintiff's alleged onset of disability on July 31, 2006, it was reasonable for the ALJ to reject Dr. Cahn's opinion as having "little relevancy" to the period Plaintiff is alleging disability.

Second, the ALJ noted that Dr. Cahn "did not take into account [Plaintiff's] abilities if he followed up with consistent treatment for his impairments, and took medication for his impairments as prescribed." Tr. 24. Plaintiff argues this was an improper reason for the ALJ to reject Dr. Cahn's opinion. The Court agrees. The Court is unable to discern, nor does the ALJ cite to, legal authority to support the rejection of a medical opinion because the provider did not consider what Plaintiff's limitations might be with hypothetical treatment. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). Nor does the ALJ cite

evidence that Plaintiff failed to seek or comply with a prescribed course of treatment. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure). However, this error is harmless because the ALJ gave additional reasons, supported by substantial evidence, for rejecting Dr. Cahn's opinion. *See Carmickle*, 533 F.3d at 1162-63.

Third, the ALJ notes that "it is unclear what period of time [Dr. Cahn's] opinion addressed. . .. However, if [Dr. Cahn's] opinion applies to all work, I give little weight to his opinions because it is inconsistent with [Plaintiff's] robust activities of daily living, which involved helping his father with property management, attending meetings of a town planning commission, taking long car trips, taking his father to the hospital several hours away for cancer treatment, and providing companionship to his ill mother." Tr. 24. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Plaintiff generally argues "[t]here is no clear contradiction between Dr. Cahn's opinion and the ALJ's listed activities of [Plaintiff] attending a few meetings and spending time with his father as he died of cancer." ECF No. 10 at 18. However, regardless of Plaintiff's characterization of these activities, the Court finds it was reasonable for the ALJ to conclude that Dr. Cahn's opinion that Plaintiff is completely unable to

do "all work" is inconsistent with his extensive activities, which included: helping

with his father's property management business, participating in meetings with the

planning commission, taking long car trips, and care-taking both of his parents

while they were ill. Tr. 24; *see Burch*, 400 F.3d at 679 (where evidence is

susceptible to more than one interpretation, the ALJ's conclusion must be upheld).

Based on the foregoing, the Court finds no error in the ALJ's consideration

of Dr. Cahn's opinion.

**D. Lay Witness Evidence**

"In determining whether a claimant is disabled, an ALJ must consider lay

witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc.

Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12

F.3d 915, 918-19 (9th Cir. 1993) ("friends and family members in a position to

observe a claimant's symptoms and daily activities are competent to testify as to

[his] condition."). To discount evidence from lay witnesses, an ALJ must give

reasons "germane" to each witness. *Dodrill*, 12 F.3d at 919.

Here, Kathy Bennett, self-described as a "family member," and a licensed

social worker employed at DSHS for 27 years, wrote a letter "attest[ing] to

[Plaintiff's] difficulties with employment and interpersonal relationships." Tr.

300-01. Specifically, she reported that Plaintiff was exhibiting symptoms of

bipolar disorder at 16 years old, he was unable to complete college despite many

attempts due to episodes of severe depression, he had difficulties remaining

employed due to irritability with co-workers and erratic job performance, he was dismissed from multiple jobs, he isolated himself for weeks and sometimes months at a time, he made poor decisions in "manic" phases, and he has never been married or had a serious relationship "due to his fluctuating moods." Tr. 300-01. Ms. Bennett also noted that Plaintiff has "tried multiple attempts at treatment with antidepressants and therapy without success." Tr. 301. The ALJ gave Ms. Bennett's opinion little weight. Tr. 24.

As an initial matter, Plaintiff argues the ALJ "failed to properly consider the appropriate factors to determine to what extent this opinion should be credited." ECF No. 10 at 14-15 (citing 20 C.F.R. § 404.1527(c), (f) (in weighing opinion evidence, the ALJ considers length of treatment relationship, nature and extent of the relationship, supportability, consistency, specialization; however, "not every factor for weighing opinion evidence will apply in every case.")). Plaintiff notes that Ms. Bennett is a social worker employed by DSHS and has known Plaintiff for 27 years, and therefore contends that "[g]iven her [professional] training, on top of this extensive contact, her opinion may have even outweighed an acceptable medical source's, had the ALJ properly considered these factors." ECF No. 10 at 15. However, as noted by Defendant, Ms. Bennett has never examined or treated Plaintiff, nor does her letter indicate any review of his treatment records. ECF No. 14 at 13-14. Moreover, "[e]ven if Ms. Bennett were considered more than a lay witness, she, as a social worker, could only qualify as an "other source" under the

regulations, and the ALJ would still only have to offer germane reasons to reject her statement.  The ALJ offered such a reason here."  ECF No. 14 at 14 (citing *Molina*, 674 F.3d at 1111).

The ALJ gave little weight to Ms. Bennett's opinion because "the severity of her opinions is inconsistent with [Plaintiff's] robust activities of daily living during the period at issue.  For instance, he reports attending planning commission hearings and testifying; helping his father with a property management business; and, performing household chores."  Tr. 24.  Inconsistency between a claimant's activities and a lay witness's testimony is a germane reason to discount the lay testimony.  *See Carmickle*, 533 F.3d at 1164.  Plaintiff argues the ALJ failed to indicate how Plaintiff daily activities were inconsistent with Ms. Bennett's statements that Plaintiff had periods of time during which he was able to hold down a job, but also needed to isolate for significant periods and had interpersonal conflicts at work that resulted in being terminated or quitting.  ECF No. 10 at 16.  However, while not acknowledged by Plaintiff, the ALJ specifically found that Ms. Bennett's statements were inconsistent with Plaintiff's activities during the relevant adjudicatory period, July 31, 2006 through December 31, 2006, during which he reported helped his father with a property management business, attended planning commission meetings up to twice a week and 250 miles away from his home, drove a car, did household chores, and cared for his elderly mother.  Tr. 24.  Thus, regardless of Ms. Bennett's observations over the entire course of their

familial relationship that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to find that Plaintiff's extensive daily activities during the relevant adjudicatory period were inconsistent with the severity of Ms. Bennett's statements. *See Burch*, 400 F.3d at 679.

Second, the ALJ noted that Ms. Bennett "did not take into account [Plaintiff's] abilities if he followed up with consistent treatment for his impairments and took his medications as prescribed." Tr. 24. Plaintiff argues this reason is "inaccurate" because Ms. Bennett specifically noted that Plaintiff "tried multiple attempts at treatment with antidepressants and therapy without success. His attempts often resulted in temporary improvement but ultimately resulted in more severe episodes of depression." ECF No. 10 at 15-16 (citing Tr. 301). The Court agrees. This was not a specific and germane reason for the ALJ to reject Ms. Bennett's lay witness statement. *See Brown-Hunter*, 806 F.3d at 495 (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). However, this error is harmless because the ALJ gave additional reasons, supported by substantial evidence, for rejecting Ms. Bennett's lay witness statement. *See Carmickle*, 533 F.3d at 1162-63. Moreover, Plaintiff fails to identify any specific functional limitations opined by Ms. Bennett,

particularly from the relevant adjudicatory period, that are not accounted for in the RFC. *See Turner*, 613 F.3d at 1223; *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination").

For all of these reasons, the ALJ did not err in considering Ms. Bennett's lay witness statement.

### E. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 22.

### 1. *Lack of Objective Medical Evidence*

First, regarding Plaintiff's claimed mental impairment,[5] the ALJ found Plaintiff's "treatment notes contain only intermittent complaints of mental symptoms; there are few objective findings indicative of significant functional

---

[5] The ALJ similarly found that the medical record does not support the severity of Plaintiff's alleged physical limitations. Tr. 22. However, the Court declines to address this issue because it was not raised with specificity in Plaintiff's briefing. *Carmickle*, 533 F.3d at 1161 n.2.

restrictions." Tr. 22. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Thus, minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch*, 400 F.3d at 680.

First, Plaintiff argues the ALJ failed to consider "the many prior attempts [Plaintiff] has made to seek ultimately unhelpful treatment." ECF No. 10 at 20. However, the only evidence offered by Plaintiff in support of this finding are his own self-reports that he sought treatment. *See* Tr. 236-37, 301, 362. The Court does not discern, nor does Plaintiff identify, any objective medical evidence from July 31, 2006 through December 31, 2006, the relevant adjudicatory period, that supports Plaintiff's symptom claims. Second, Plaintiff argues "the record supportively shows [Plaintiff] had a flat or constricted affect, was sad, or discouraged, was frustrated, and had reduced psychomotor." ECF No. 10 at 20 (citing Tr. 362, 365, 370-71, 417, 655, 663, 667). However, as noted by Defendant, treatment records from the overall record also noted that Plaintiff was

"engaging" and "cooperative" during interviews, with appropriate mood and affect, and normal insight and judgment. ECF No. 14 at 7 (citing Tr. 362, 380).

Thus, regardless of evidence that could be interpreted more favorably to the Plaintiff from the longitudinal record, it was reasonable for the ALJ to discount Plaintiff's symptom claims based on the complete lack of objective criteria during the relevant adjudicatory period to support those claims. *See Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld where evidence is susceptible to more than one rational interpretation). This lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

### 2. *Daily Activities*

Second, the ALJ noted that Plaintiff reported that he was able to perform a wide variety of activities with his depression. Tr. 22-23. Plaintiff correctly notes that a claimant need not be utterly incapacitated in order to be eligible for benefits. ECF No. 10 at 14 (citing *Fair*, 885 F.2d at 603); *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, Plaintiff testified that in 2006 he was unable to work because he could not get out of bed for weeks or months at a time, due to depression, which "affected [his] job performance, [his] attendance and the attitude of [his] employers." Tr. 74-75. He further testified that he feels depressed 80% of the time and "good" 20% of the time. Tr. 95. In a function report, Plaintiff reported "[p]eriodic, often long-term bouts of serious depression intertwined with noticeable irritability have been the cause of both firings/layoffs and long periods of unemployment." Tr. 21 (citing Tr. 264). However, as noted by the ALJ, Plaintiff also testified to a "wide a variety of activities with his impairments during the period he is alleging disability," including: helping his father with his property management business, which involved attending meetings up to 250 miles away from his home; attending meetings as much as twice a week that involved interacting with the planning commission, engineers, and other interested parties; helping manage rental properties; and helping to care for his elderly mother, who was in poor health. Tr. 21-23, 78-83. Moreover, Plaintiff reported that he performed a "wide variety of activities," including: running errands, cooking meals, washing laundry, driving a car, shopping for groceries, calling people on the phone and using email, paying bills, and handling money. Tr. 22 (citing Tr. 265-68).

Plaintiff argues the ALJ fails to consider the "limited nature" of these activities. ECF No. 10 at 19. In support of this argument, Plaintiff cites his

testimony that he only took notes at the meetings and commented "once in a while," he was still depressed most of the time while helping his parents, he was sometimes not able to function, and he "clashed" with the city manager while attending planning commission meetings. Tr. 79, 84-85, 88. However, regardless of whether the evidence could be viewed more favorably to Plaintiff, it was reasonable for the ALJ to conclude that "these activities support a finding [Plaintiff's] depression was not as limiting as he alleges." Tr. 23; *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *Burch*, 400 F.3d at 679 ("where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). This was a clear and convincing reason to discredit Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly evaluated Plaintiff's impairments at step two; properly found Plaintiff's mental impairment

did not meet or medically equal Listing 12.04; properly weighed the medical opinion evidence; properly considered the lay witness statement; and provided clear and convincing reasons to discount Plaintiff's symptom testimony. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** January 15, 2019.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge